IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

CLERKS OFFICE US DISTRICT COURT
AT HARRISONBURG, VA
FILED
06/20/2025
LAURA A. AUSTIN, CLERK
BY: /s/ Amy Fansler
   DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) Criminal No. 5:09-cr-00043<br>)<br>)<br>) By: Michael F. Urbanski<br>) Senior United States District Judge<br>) |
| v. | |
| CLINTON SHAWN MARTIN, JR.,<br>Defendant-Petitioner | |

## MEMORANDUM OPINION

This matter comes before the court on defendant Clinton Shawn Martin, Jr.'s motions for compassionate release filed pursuant to 18 U.S.C. § 3582(c)(1)(A). On December 18, 2024, Martin filed a pro se motion, and on February 23, 2025, the Federal Public Defender filed a supplemental motion on his behalf. ECF Nos. 33, 41. The government filed a response on May 23, 2025, to which Martin replied on June 3, 2025. ECF Nos. 45, 46. As set forth below, the court will **GRANT** Martin's motions and **REDUCE** his sentence from 240 months to 180 months, but not less than time served, to be followed by a 5-year term of supervised release.

**I. Background**

On November 19, 2009, Martin entered into a Rule 11(c)(1)(C) plea agreement in which he pled guilty to one count of conspiring to distribute 500 grams or more of a mixture containing methamphetamine in violation of 21 U.S.C. §§ 846 and 841, in exchange for a sentence of 20 years. Plea Agreement, ECF No. 3 at 1. At the time Martin entered into the plea agreement, the government filed a notice pursuant to 21 U.S.C. § 851 notifying him of its intent to increase his sentence based upon a previous conviction for sale or distribution of

controlled substances in or near school property.[1] With the § 851 enhancement, Martin faced a statutory minimum sentence of 20 years. Without the enhancement, he had a statutory minimum sentence of 10 years.

Under the United States Sentencing Guidelines (USSG or guidelines), Martin had an offense level of 34 based on at least 1.5 but less than 5 kilograms of methamphetamine. Pre-Sentence Investigation Report (PSR), ECF No. 24 ¶ 15. He received an additional 2 points for his role as manager and a 3-point reduction for acceptance of responsibility for a total offense level of 33. Id. ¶¶ 16–24. He had a total of 12 criminal history points, 2 of which were added because he was on probation at the time of the offense and 1 of which was added because he had been released from custody for less than two years when he committed the offense. His criminal history score of 12 resulted in a criminal history category of V. Id. ¶¶ 39-42. The combination of his total offense level and criminal history category resulted in a guidelines sentence of 210 to 262 months. However, because he faced a minimum statutory sentence of 20 years, his guidelines range was 240 to 262 months. Id. ¶ 65. In accordance with the plea agreement, on February 8, 2010, Martin was sentenced to a term of 20 years imprisonment, to be followed by a 10-year term of supervised release. J., ECF No. 18.

Martin has been incarcerated since January 14, 2009. He currently is housed at United States Penitentiary Coleman and has a projected release date of February 24, 2027.[2]

---

[1] Section 851 provides the following: "No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States attorney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon." 21 U.S.C. § 851.

[2] https://www.bop.gov/mobile/find_inmate/byname.jsp#inmate_results (search "Clinton Shawn Martin") (last viewed May 30, 2025).

2

Martin seeks compassionate release based on his assertion that if sentenced today, he no longer would be subject to an enhanced sentence because his underlying predicate offense no longer qualifies as a "serious drug felony." Moreover, even if he still were subject to the sentence enhancement, the mandatory minimum sentence has been reduced from 20 years to 15 years. Accordingly, he argues that the difference between the sentence he currently is serving and the sentence that he likely would be assessed today is a gross disparity that warrants compassionate release.

The government responds that (1) the United States Sentencing Commission (the Commission) exceeded its authority when it promulgated USSG § 1B1.13; (2) even if the Commission did not exceed its authority, Martin cannot establish that the sentence he received is unusually long or grossly disparate to the sentence he might receive today; and (3) the 18 U.S.C. § 3553(a) factors weigh against granting compassionate release to Martin.

**II. Analysis**

The compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, authorizes courts to modify terms of imprisonment as follows:

> The court may not modify a term of imprisonment once it has been imposed except that—in any case—the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, Martin's requested relief requires the court to consider (1) if he exhausted his administrative remedies; (2) if so, whether there are extraordinary and compelling reasons that warrant a reduction in his sentence; and (3) if so, what, if any, sentence reduction is appropriate after considering the applicable 18 U.S.C. § 3553(a) factors.

Martin presented evidence that he exhausted his administrative remedies and the government does not contest exhaustion. Resp., ECF No. 45 at 12. Accordingly, the court finds that Martin exhausted his administrative remedies.

Regarding whether Martin has established an extraordinary and compelling need for a sentence reduction, prior to enactment of the First Step Act of 2018, only the Bureau of Prisons could file a motion for compassionate release on behalf of an inmate. United States v. High, 997 F.3d 181, 185 (4th Cir. 2021) (citing 18 U.S.C. § 3582(c)(1)(A) (2002)). The First Step Act, among other changes, amended § 3582(c)(1)(A) to allow inmates to file motions with a district court on their own behalf after exhausting their administrative remedies.

The statute also requires that any reduction based on an extraordinary and compelling reason be consistent with applicable policy statements issued by the Commission. But, prior to March 2023, there were no "applicable policy statements" to reference, because the Commission lacked a quorum and could not act. See discussion, United States v. McCoy, 981

4

F.3d 271, 280–84 (4th Cir. 2020).[3] In the absence of applicable policy statements, courts looked to relevant sentencing guidelines provisions to determine whether a motion presented an extraordinary and compelling reason warranting a sentence reduction. United States v. Davis, 99 F.4th 647, 654 (4th Cir. 2024). Courts in the Fourth Circuit (and other circuits) held that a change in law that resulted in a gross disparity between the sentence a defendant received and the sentence that he likely would receive were he convicted today could be an extraordinary and compelling reason warranting a sentence reduction. See McCoy, 981 F.3d at 286, and the cases that followed it.

In May 2023, the Commission achieved a quorum and adopted revised guidelines that became effective November 1, 2023. Included in the revisions were policy statements addressing motions for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) when a defendant alleges that "extraordinary and compelling" reasons warrant a reduction. See U.S. SENT'G COMM'N, GUIDELINES MANUAL § 1B1.13 (Nov. 2023). As is relevant to Martin's motion, the revisions include a policy statement that addresses when an "unusually long sentence" can be a reason for a court to grant a sentence reduction under § 3582(c)(1)(A). The policy statement provides that a defendant is eligible for a sentence reduction if he can show the following:

> (6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but

---

[3] See also U.S. Sentencing Comm'n Annual Report 2–3 (2019) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report.pdf.

> only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.
>
> (c) Limitation on Changes in Law.--Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

USSG §§ 1B1.13(b)(6) and (c).

Martin has served at least 10 years of his term of imprisonment and thus satisfies the initial criterion. When Martin originally was sentenced, he was subject to a 20-year minimum sentence under 21 U.S.C. § 841(b)(1)(A), because he had a prior felony drug offense. Prior to the First Step Act, § 841(b)(1)(A) provided that if a person violated the statute "after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than 20 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2010). The First Step Act amended the statute to provide that if a person violated the statute "after a prior conviction for a serious drug felony or serious violent felony has become final, such person shall be sentenced to a term of imprisonment of not less than 15 years . . . ." 21 U.S.C. § 841(b)(1)(A) (2018). Thus, two changes were made to the statute: The underlying crime must now be a "serious drug felony," and the mandatory minimum sentence with a prior qualifying predicate was lowered to 15 years.

The term "felony drug offense" is defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct related to narcotic drugs . . . ." 21 U.S.C. § 802(44). The term "serious drug felony" is defined as an offense described in 18 U.S.C. § 924(e)(2) for which the offender served a term of imprisonment of more than 12 months. 21 U.S.C. § 802(57). Therefore, today, in order for a sentence to be increased under § 841(b)(1)(A), a person must have a prior conviction for a "serious drug felony" rather than a "felony drug offense," meaning he must have served more than 12 months on the offense.

It is undisputed that Martin did not serve a term of imprisonment on the underlying drug charge that was cited as the predicate offense for the § 851 enhancement. Rather, he served a 3-year term of unsupervised probation. PSR, ECF No. 24 ¶ 36. If Martin were sentenced for the same conduct today and the § 851 enhancement did not apply, he would be subject to a mandatory minimum sentence of 10 years and his guidelines range would be 168 to 210 months.[4] 21 U.S.C. § 841(b)(1)(A); USSG Ch. 5 Pt A. Even if the enhancement applied, the statutory mandatory sentence has been reduced to 15 years and his guidelines sentence would be 180 to 210 months, rather than 240 to 262 months. Additionally, without the sentencing enhancement, Martin would be subject to a 5-year minimum term of supervised release, rather than a 10-year term. 21 U.S.C. § 841(b)(1)(A).

---

[4] This guidelines sentence calculation incorporates Amendment 782 to the guidelines, which took effect in 2014. Martin previously sought a reduced sentence based on the lowering of the guidelines but his motion was denied because he was serving the statutory minimum sentence for his offense. ECF Nos. 21, 22. However, given the changes in the law and the court's finding that Martin is entitled to a sentence reduction, it is appropriate to consider Amendment 782 when calculating a modified sentence for Martin. United States v. Hartwell, Crim. No. 3:00cr72, 2023 WL 6626144, at *3 (E.D. Va. Oct. 11, 2023) (citing Concepcion v. United States, 142 S.Ct. 2389, 2396 (2022)).

Martin argues that the difference between the 20-year sentence he received in 2010 and the sentence he likely would receive today, a low-end-of-the guidelines sentence of 168 months, is a gross disparity that warrants compassionate release. Because Martin has now served more than 196 months, he further argues that he is entitled to a sentence of time served and immediate release.

### A. Sentencing Commission's Authority to Promulgate USSG § 1B1.13(b)(6) and (c).

The government first argues that the Commission exceeded its authority when it amended the policy statement at USSG §§ 1B1.13(b)(6) and (c), and that the policy statement is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose. However, these arguments are foreclosed by the Fourth Circuit's decision in Davis and the Supreme Court decision in Concepcion v. United States, 597 U.S. 481, 487 (2022).

In Davis, the Fourth Circuit held that a change in case law can constitute an extraordinary and compelling reason for compassionate release. The court first quoted McCoy, 981 F.3d at 287 (cleaned up), for its statement that "the very purpose of § 3582(c)(1)(A) is to provide a safety valve that allows for sentence reductions where there is not a specific statute that already affords relief but extraordinary and compelling reasons nevertheless justify a reduction." Davis, 99 F.4th at 657. The court next quoted Concepcion, 597 U.S. at 487 (2022), which held that "[b]ecause district courts are always obligated to consider the nonfrivolous arguments presented by the parties, the First Step Act requires district courts to consider intervening changes when parties raise them." Davis, 99 F.4th at 657. The court concluded that Concepcion and the Commission's policy statement in § 1B1.13(b)(6) "serve to confirm and amplify" the court's earlier ruling in McCoy that "[n]on-retroactive changes in law remain

8

relevant when a court has to decide when and how to modify a sentence," and a court abuses its discretion when it fails to consider the changes. Id. at 658.

Although the Fourth Circuit did not examine the language of § 1B1.13(b)(6) in connection with 18 U.S.C. § 3582(c)(1)(A), given the court's unequivocal holding that non-retroactive changes in the law may warrant compassionate release, this court has no basis for finding that the Commission exceeded its authority when it promulgated USSG § 1B1.13(b)(6), or that the policy statement is at odds with 18 U.S.C. § 3582(c)(1)(A)'s plain text, context, and purpose such that the court should not follow it. See also United States v. Spencer, No. 2:11-cr-30, 2025 WL 572398, at *4 (E.D. Va. Feb. 13, 2025) (finding government's argument that the Commission exceeded its authority when it promulgated § 1B1.13(b)(6) unpersuasive and unsupported by established precedent); United States v. Powell, No. 5:17-CR-00169-M-2, 2024 WL 4778029 at *3, n.1 (E.D.N.C. Nov. 13, 2024) (rejecting argument that the Commission exceeded its statutory authority based on Concepcion and Davis); and United States v. Dire, No. 2:10cr56, 2024 WL 4259871, at *3 n.3 (E.D. Va. Sept. 20, 2024) (rejecting argument by government that the Commission exceeded its authority when it authorized district courts to consider non-retroactive statutory amendments as a basis for compassionate release); see also United States v. Berry, Nos. 1:05-CR-118, 1:05-CR-119, 2024 WL 4466828 (M.D.N.C Oct. 10, 2024) (finding without discussion of whether the Commission exceeded its authority that a sentence reduction was consistent with § 1B1.13(b)(6) based on intervening changes to 18 U.S.C. § 924(c) and the sheer length of the defendant's sentence).

The court finds that §§ 1B1.13(b)(6) and (c) of the guidelines are consistent with 18 U.S.C. § 3582(c)(1)(A) and 28 U.S.C. § 994(t). The Commission did not exceed its authority

9

when it amended the policy statement, and the court will apply the Commission's interpretation of what constitutes an extraordinary and compelling circumstance warranting a sentence reduction to Milton's case.

**B. Gross Disparity**

The government next argues that Martin cannot establish that the sentence he received is unusually long or grossly disparate to the sentence he might receive today. First, the government points out, correctly, that Martin agreed to his 240-month sentence. However, today, with the § 851 enhancement off the bargaining table, and the mandatory minimum sentence reduced from 20 years to 15 years even with the enhancement, the plea agreement framework would be substantially different. Martin would have virtually no incentive to agree to a sentence of 20 years when facing a statutory minimum sentence of 10 years and a guidelines range of 168 to 210 months. Accordingly, the court does not find that it is precluded from concluding that Martin's sentence is grossly disparate from the sentence he would be assessed today because of the Rule 11(c)(1)(C) plea agreement.

The government next argues that if sentenced today, even with a guidelines range of 168 to 210 months, the court might have varied upward on the sentence because of Martin's lengthy criminal history, which was only "partially captured" by his criminal history category. In addition, the government cites Martin's leadership role and asserts that the amount of methamphetamine attributed to him was a "conservative estimate." Resp., ECF No. 45. This argument is unpersuasive. Martin's criminal history, his role in the enterprise, and the drug weight attributed to him at the time he was sentenced were accounted for in the PSR and

10

considered by the court. Nothing has changed to suggest that the court would vary upwards substantially from the low end of the guidelines today when it did not do so in 2010.

The court concludes that if Martin were sentenced today after the First Step Act changed the penalty provisions of § 841(b)(1)(A), and after passage of Amendment 782, he likely would be sentenced to a term of 180 months, rather than 240 months. The 60-month difference between the 240-month sentence Martin was assessed in 2010 and the likely 180-month sentence he would be assessed today is a "gross disparity" that establishes an extraordinary and compelling reason for a sentence reduction in accordance with USSG §§ 1B1.13(b)(6).

### C. 18 U.S.C. § 3553(a) Factors

Having found that an extraordinary and compelling reason exists for a sentence reduction, the court "must 'consider[]' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." High, 997 F.3d at 186 (quoting 18 U.S.C. § 3582(c)(1)(A)). The factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;

11

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; . . . .

(5) any pertinent policy statement –

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

(B) that, except as provided in § 3742(g), is in effect on the date the defendant is sentenced[;]

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Looking first at the nature and circumstances of the offense, Martin participated in a methamphetamine conspiracy for approximately 15 months in and around Harrisonburg, Virginia. Martin obtained the drugs from a co-conspirator and distributed them on consignment to others to sell. Martin was held accountable for distribution of between 1.5 but less than 5 kilograms of methamphetamine. PSR, ECF No. 24 ¶¶ 7–10. Martin's participation in this conspiracy weighs against a sentence reduction.

Turning to the history and characteristics of the defendant, Martin's criminal history includes property crimes as a 19-year-old, the offense of possession of a controlled substance (gabapentin) with intent to distribute within 1,000 feet of school property, one count of obstructing an officer without violence, one count of resisting an officer without violence, and one count of carrying a concealed weapon, a large knife, in his back pocket. Id. ¶¶ 27–38. Martin grew up in extreme poverty and was diagnosed as a child with ADHD and an adjustment and conduct disorder. Id. ¶¶ 54, 57. He began using methamphetamine at the age of 18 and abusing prescription opiates at 21. Prior to his arrest he was smoking "ice," occasionally drinking alcohol to excess, and occasionally smoking marijuana, snorting and smoking cocaine, and injecting heroin. Id. ¶ 58.

Neither party submitted evidence of Martin's institutional history, but Martin stated that while incarcerated he has committed several infractions, although none has been "seriously violent." Mot., ECF No. 33 at 10. Martin claims that every infraction was a result of his untreated drug addiction, and that most of the infractions were for drug use. Id. Martin began treatment with medication for opioid use disorder in October 2023 and informs that court that he has remained drug free with no disciplinary infractions since that time. Id.; Med. R., ECF No. 41-4 at 1. Martin has taken a number of vocational and personal growth classes while incarcerated. Inmate Educ. Data, ECF No. 41-2.

Taken as a whole, Martin's history and characteristics are neutral regarding a sentence reduction. However, the fact that he is being treated with medication for substance abuse disorder and has been incident-free since starting the treatment is greatly encouraging.

13

Looking next at the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, the court finds that a sentence of 180 months is sufficient to meet these goals. Such a sentence is substantial, and the court does not believe that additional time is necessary to achieve the punitive and deterrent goals of punishment. Nor does the court find that additional time is necessary to provide Martin with educational or vocational training, medical care, or other correctional treatment.

Looking at the kinds of sentences available and the applicable guidelines range, as discussed above, Martin would face a statutory mandatory minimum sentence of 120 months for his offense if he were sentenced today, and his guidelines range would be 168 to 210 months. This factor weighs in favor of reducing Martin's sentence to 180 months but not less than time served. Regarding consideration of pertinent policy statements, as set forth above, the court finds that reducing Martin's sentence to 180 months is consistent with USSG §§ 1B1.13(b)(6) and (c).

Finally, considering the need to avoid unwarranted sentencing disparities, the court notes that Martin's sentence of 240 months was the same as that of a co-conspirator, Rafael Jimenez, and that Jimenez was granted compassionate release with a sentence reduction to 210 months based on the same changes to § 21 U.S.C. § 841(b)(1)(A) cited by Martin, as well as on changes to the career offender guideline. See United States v. Jimenez, No. 5:09-cr-00032, 2023 WL 3309878 (W.D. Va. May 8, 2023). Another co-conspirator, Moises Morejon, initially

14

was sentenced to 300 months, but his sentence was reduced to 240 months following a successful motion for compassionate release, also based on the same changes to 21 U.S.C. § 841(b)(1)(A) cited by Martin. See United States v. Morejon, No. 5:09-cr-00032, 2023 WL 1113150 (W.D. Va. Jan. 30, 2023). Reducing Martin's sentence to the lower end of his current guidelines range will help avoid an unwarranted sentencing disparity between Martin and his co-conspirators.[5]

After considering the parties' arguments and the applicable § 3553(a) factors, the court concludes that a sentence reduction is warranted in Martin's case. Given the circumstances of his case, including the facts related to the offense, Martin's history and characteristics, the changes to sentence enhancement language in 21 U.S.C. § 841, and the relevant guidelines, the court concludes that a sentence of 180 months, but not less than time served, is appropriate. Such a sentence is sufficient, but not greater than necessary, to reflect the seriousness of Martin's conduct and criminal history, promote respect for the law, provide just punishment, afford specific and general deterrence, and protect the public.

---

[5] The reduction in Martin's sentence to 180 months in comparison to 210 months for Jimenez and 240 months for Morejon expressly considers Morejon's and Jimenez's involvement with firearms. See United States v. Jimenez, No. 5:09-cr-00032, 2023 WL 3309879 at *8 (W.D. Va. May 8, 2023). Morejon's PSR indicated that during the execution of a search warrant at his address, Morejon engaged in a brief standoff with law enforcement officers, holding a 9mm handgun. Morejon had three firearms at his residence. United States v. Morejon, No. 5:09-cr-00032, ECF No. 71, ¶ 8. Jimenez's PSR states that "the investigation revealed that Jimenez was known for his ability to obtain firearms and was utilized to provide guns to the other members of the conspiracy to be used during the distribution of the methamphetamine." United States v. Jimenez, No. 5:09-cr-00032, ECF No. 147 ¶ 10. Further, Jimenez fired a weapon at an individual he believed to be responsible for Morejon's arrest to scare him. Id. ¶ 12. The offense conduct section of Martin's PSR, in contrast, does not reflect Martin's involvement with firearms. ECF No. 24 ¶¶ 7–10.

## III. Conclusion

For the above-stated reasons, the court will **GRANT** Martin's motions for compassionate release, ECF Nos. 33, 41, and reduce his sentence to 180 months, but not less than time served, to be followed by a 5-year term of supervised release. The clerk is directed to send a copy of this memorandum opinion and accompanying order to the petitioner, his counsel of record, and the United States.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: June 18, 2025

Michael F. Urbanski
Senior United States District Judge